UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. DIANA HUNTER,<br><br>        *Plaintiff*,<br><br>v.<br><br>1. AMERICAN RED CROSS, a/k/a AMERICAN RED CROSS SOUTHWEST BLOOD SERVICES REGION,<br><br>        *Defendant*. | Case No.: 4:17-cv-00561-JED-JFJ |

**DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR ALTERNATIVELY TO TRANSFER UNDER 28 U.S.C. § 1404, AND BRIEF IN SUPPORT**

Defendant American Red Cross ("the Red Cross") is a federally-chartered non-profit corporation with its principal place of business in the District of Columbia. As such, it is not subject to the general jurisdiction of Oklahoma courts, including this Court. Nor is it subject to specific jurisdiction in this case because the incidents at issue occurred in Texas, not Oklahoma. Accordingly, the Court should dismiss the complaint under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. As this Court lacks personal jurisdiction, it is an improper venue under 28 U.S.C. § 1391, and so dismissal is also appropriate under Rule 12(b)(3) of the Federal Rules of Civil Procedure.

Even if the Court finds it has personal jurisdiction and is a proper venue, it should transfer this case to the U.S. District Court for the Northern District of Texas under 28 U.S.C. § 1404 for the convenience of the parties and the witnesses. This jurisdiction has no connection to this matter beyond the fact that Hunter currently resides in it.

1

**FACTUAL BACKGROUND**

The Red Cross is a federally-chartered non-profit corporation with its principal place of business in the District of Columbia. 36 U.S.C. § 300101. As the petition suggests, the Red Cross uses the pseudonym "American Red Cross Southwest Blood Services Region" ("the Region") for some of its operations in the southwest. (Pet. [Dkt. 2-1] at 1.) The Region, however, is not a separate legal entity from the Red Cross.[1]

Hunter is a former employee of the Red Cross who transferred to the Red Cross's office in Dallas, Texas, in October 2015. (Pet. [Dkt. 2-1] ¶ 10.) Hunter asserts that the Red Cross discriminated against her on the basis of race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981. (*Id.* ¶¶ 19-20.) Her petition candidly admits that "[t]he incidents and occurrences that form the basis of the Plaintiff's action occurred in Dallas, Texas." (*Id.* ¶ 3.) Although Hunter's claims of discrimination are unfounded, her allegation that the relevant incidents occurred in Dallas, Texas, are correct.

The petition alleges claims arising out of three incidents. First, it alleges that the Red Cross discriminated against Hunter by denying her a promotion when she attempted to apply for a "Tech II" position that was posted in April 2016. (*Id.* ¶¶ 11-18, 20.) The "Tech II" position that was posted in April 2016 was located in Dallas, Texas, and was filled by Everett Webster. (Washburn Decl., Ex. 2 ¶ 16.)

Hunter mistakenly alleges that the position advertised in the April 2016 job posting was filled by a Caucasian employee named "Amanda." (Pet. [Dkt. 2-1] ¶¶ 14, 18.) Although an

---

[1] Congress has authorized the Red Cross to grant charters to local units known as "chapters." 36 U.S.C. § 300103(b). The Region is not a chapter, and does not have its own charter. In any event, the Red Cross's bylaws clearly provide that chapters "shall not be constituted as legal entities separate from [the Red Cross]." (Bylaws, Ex. 1. § 8.1.)

2

employee named Amanda Messick was promoted, it was not related to the April 2016 job posting. (*See* Washburn Decl., Ex. 1 ¶ 16.) In any event, the decision to promote Messick was made by Christina Taylor. (*Id*. ¶ 15.) Both Messick and Taylor worked in Dallas, Texas, during the relevant time period. (*Id*. ¶¶ 8-10, 13-14.)

Second, the petition alleges that Taylor and Michael Hullinger "began singling out Plaintiff for write-ups and disciplinary action" after she "complained about being unable to apply for the Tech II position." (Pet. [Dkt. 2-1] ¶ 16.) Hunter, Taylor, and Hullinger all worked in Dallas, Texas, during the entire period between the April 16, 2016 job posting and Hunter's termination. (*Id*. ¶¶ 3, 10; Washburn Decl., Ex. 2 ¶¶ 8-11.)

Third, the petition alleges that the Red Cross terminated Hunter based on race. (Pet. [Dkt. 2] ¶¶ 17, 20.) The decision to terminate Hunter's employment was made by Taylor and Hullinger in Dallas, Texas. (Washburn Decl., Ex. 2 ¶ 7-8.) Hunter was terminated for attendance and performance issues that occurred in June 2016 while she was working in Dallas, Texas. (*Id*. ¶¶ 9; Termination Mem., Ex. 3; *see also* Pet. [Dkt. 2-1] ¶¶ 3, 10.)

Other than plaintiff, none of the potential witnesses referenced in the petition currently reside within 100 miles of this Court. (Washburn Decl., Ex. 2 ¶¶ 10-11, 14, 17.) All of them, however, reside within 100 miles of the U.S. District Court for the Northern District of Texas. (*Id*.) Specifically, Taylor currently resides in Frisco, Texas; Hullinger currently resides in Forth Worth, Texas; Messick currently resides in Plano, Texas; and Webster's last-known residence is in Frisco, Texas. (*Id*.) None of the paper files related to Hunter's termination, or the incidents upon which the decision to terminate Hunter was based, are located in Oklahoma. (*Id*. ¶ 18.)

**ARGUMENT**

**I.    THIS COURT SHOULD DISMISS HUNTER'S PETITION FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE.**

Hunter, as the plaintiff, bears the burden of establishing personal jurisdiction. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008) (citation omitted). She cannot met that burden.

In determining whether it has personal jurisdiction, a federal district court "'must . . . apply the law of the state in which the district court sits.'" *Mandeville v. Crowley*, 695 F. App'x 357, 2017 U.S. App. LEXIS 10102, at *5 (10th Cir. 2017) (*quoting Dudnikov*, 514 F.3d at 1070). Consequently, this Court must apply the laws of the State of Oklahoma in determining whether it has jurisdiction over the Red Cross in this matter. *Id.*; *see also Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014).

Oklahoma's long-arm statute permits the exercise of jurisdiction on any basis permitted under the United States Constitution. Okla. Stat., tit. 12, § 2004(F). The question before the Court, therefore, is whether an Oklahoma court's exercise of jurisdiction over the Red Cross in this case would be constitutionally permissible. *See Mandeville*, 695 F. App'x 357, 2017 U.S. App. LEXIS 10102, at *5 (citations omitted).

"[A] State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (*quoting Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). There are two categories of personal jurisdiction: (1) general jurisdiction; and (2) specific jurisdiction. *Daimler*, 134 S. Ct. at 754-57. This case does not fit into either category.

### A. The Red Cross Is Not Subject To This Court's General Jurisdiction.

A court can exercise general jurisdiction over parties only if their "affiliations with the State are so 'continuous and systematic' as to render them <u>essentially at home</u> in the forum State." *Daimler*, 134 S. Ct. at 754 (*quoting Goodyear*, 564 U.S. at 918 (other citations omitted) (emphasis added). "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Id*. at 760 (*quoting Goodyear*, 564 U.S. at 924 (other citations omitted).

The Red Cross was not incorporated in Oklahoma and does not have its principal place of business in Oklahoma. To the contrary, the Red Cross was chartered by the United States Congress and has its principal place of business in the District of Columbia. 36 U.S.C. § 300101. Hunter's petition alleges that the Red Cross's "Southwest Blood Services Region" is headquartered in Oklahoma." (Pet. [Dkt. 2-1] ¶ 4.) The question of where the Region's operations are based is immaterial, however, because it is not a separate legal entity distinct from the Red Cross. Indeed, the petition acknowledges the fact that the Region is not a separate legal entity by using the abbreviation "a/k/a" to identify it as a pseudonym for the Red Cross, as opposed to a separate defendant. (*See id*. at 1.) Accordingly, the Red Cross does not fit within the paradigm bases for general jurisdiction recognized in *Goodyear* and re-affirmed in *Daimler*.

The only other relevant allegation in the petition is that the Red Cross "regularly conduct[s] business in Tulsa County, Oklahoma." (*Id*. ¶ 2.) However, the Supreme Court expressly held in *Daimler* that a corporation is not subject to general jurisdiction "in every State in which a [it] engages in a substantial, continuous, and systematic course of business." 134 S. Ct. at 760-61. Instead, for general jurisdiction to be appropriate, the contacts must be "'so continuous and systematic as to render [it] <u>essentially at home</u> in the forum State.'" *Id*. (*quoting*

5

*Goodyear*, 564 U.S. at 918 (internal quotation omitted) (emphasis added)). The Supreme Court rejected the notion that "a particular quantum of local activity" should be sufficient to establish that a corporation is at home. *Id*. at 762 n. 20. As the court noted, "[a] corporation that operates in many places can scarcely be deemed at home in all of them" *Id*. at 762 n. 20.

Under *Daimler* and *Goodyear*, the mere fact that the Red Cross conducts business in Oklahoma—no matter how significant the amount—is not sufficient to subject it to the general jurisdiction of Oklahoma courts. *See*, *e.g.*, *Tarver v. Ford Motor Co.*, No. CIV-16-548-D, 2016 U.S. Dist. LEXIS 167363, at *4-10 (W.D. Okla. Dec. 5, 2016) (finding that Ford Motor Company is not subject to general jurisdiction in Oklahoma despite the fact that it "does significant business there").

    B.    The Red Cross Is Not Subject to Specific Jurisdiction In This Case.

When general jurisdiction is lacking, a court may still exercise personal jurisdiction over a defendant if, and only if, "the in-state activities of the corporate defendant 'ha[d] not only been continuous and systematic, but also g[a]ve rise to the liabilities sued on.'" *Daimler*, 134 S. Ct. at 754 (*quoting Int'l Shoe*, 326 U.S. at 317). "For a State to exercise jurisdiction consistent with due process, the defendant's <u>suit-related conduct</u> must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (emphasis added).

As previously explained, Hunter's petition affirmatively alleges that "[t]he incidents and occurrences that form the basis of the Plaintiff's action occurred in Dallas, Texas." (Pet. [Dkt. 2-1] ¶ 3.) Hunter worked for the Red Cross in Texas at all times relevant to her claims; the promotion she claims she was wrongly denied was for a position in Texas; the incidents which led the Red Cross to terminate her employment occurred in Texas; and the decision to terminate her employment was made in Texas. (Washburn Decl., Ex. 2 ¶¶ 7-17.) Furthermore, none of the

6

documents related to Hunter's termination or the incidents upon which her termination was based are located in Oklahoma. (*Id.* at ¶ 18.) In fact, the only relevant event that occurred outside of Texas is a consultation between the decision-makers and Sheri Washburn, a Human Resources Business Partner. (*See* Washburn Decl., Ex. 2 ¶ 5-6.) However, Washburn was located in Nebraska, not Oklahoma, at the time. (*Id.*)

As the Red Cross's "suit-related conduct" is not connected to Oklahoma in any way, this Court does not have specific jurisdiction in this matter. *Walden*, 134 S. Ct. at 1121. Accordingly, it should dismiss this case under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

C. <u>This Court Is An Improper Venue For This Action.</u>

Dismissal is also appropriate under Rule 12(b)(3) of the Federal Rules of Civil Procedure because this Court is an improper venue. A civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> 
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> 
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). For purposes of sub-section 1, a corporation "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c).

As explained in Sections I.A and I.B above, none of the events or omissions giving rise to Hunter's claims occurred in Oklahoma, and the Court lacks personal jurisdiction with respect to this action. Accordingly, this Court is not a proper venue, and should dismiss this case.

7

## II. ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS CASE UNDER 28 U.S.C. § 1404.

Even if the Court finds that it has personal jurisdiction over the Red Cross with respect to this action and that it is a proper venue, it should still transfer the case to the U.S. District Court for the Northern District of Texas for the convenience of the parties and witnesses. 28 U.S.C. § 1404 provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . . ." 28 U.S.C. § 1404(a). In considering a motion to transfer, courts weigh the following discretionary factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and [] all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quotation omitted). In this case, the balance clearly tips in favor of transfer.

Courts in the Tenth Circuit "accord little weight to a plaintiff's choice of forum 'where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum.'" *Id*. at 1168 (*quoting Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993). As Hunter concedes that the incidents giving rise to her claims occurred in Dallas, Texas, this Court should accord little weight to the fact that she chose this forum. *Id*.

On the other hand, "'[t]he convenience of witnesses is the most important factor in

8

deciding a motion under § 1404(a).'" *Id*. at 1169 (*quoting Cook*, 816 F. Supp. at 669.) As demonstrated above, all of the witnesses referenced in Hunter's petition except for Hunter herself are located in or near Dallas, Texas—including the two individuals who made the employment decisions that are at the center of Hunter's claims, Taylor and Hullinger.[2] (*See* Washburn Decl., Ex. 2 at ¶¶ 10-17.) To the extent any other witnesses are identified during discovery, it is very likely that they will also be located in or near Dallas, Texas, since the petition admits that is where the incidents at issue occurred. (Pet. [Dkt. 2-1] ¶ 3.) Accordingly, the U.S. District Court for the Northern District of Texas is a far more convenient forum for the witnesses than this Court.

"The availability of process to compel the testimony of witnesses is also an important factor." *Cook*, 816 F. Supp. at 669. This Court's power to subpoena witnesses to appear at trial extends just 100 miles from the courthouse. Fed. R. Civ. P. 45(c)(1)(A). Accordingly, the key witnesses who reside in or near Dallas, Texas, are not within this Court's subpoena power. (*See* Washburn Decl., Ex. 2 at ¶¶ 10-17.) Conversely, the U.S. District Court for the Northern District of Texas has subpoena power over every witness except Hunter, whose appearance at trial will not need to be compelled by subpoena, and Washburn, who is not within the subpoena powe of either court. (*See id*.)

Another factor that weighs in favor of transfer is "the cost of making the necessary proof." *Emp'rs*, 618 F.3d at 1167 (quotation omitted). If trial occurs in Tulsa, Oklahoma, the Red Cross will be forced to incur significant travel-related costs to bring every single one of its witnesses—including the key decision-makers, Taylor and Hullinger—to Tulsa for the duration

---

[2] Other than Hunter, one potential witness, Washburn, is located outside of Texas. As Washburn is located in Omaha, Nebraska, however, this Court also is not a convenient forum for her. (Washburn Decl., Ex. 2 at ¶ 3.) Accordingly, Washburn's location is a neutral factor.

9

of the trial. On the other hand, if trial occurs in Dallas, Texas, the parties will likely incur travel-related costs for just one witness each—*i.e.*, Hunter and Washburn.

Another factor to be considered is the ability to obtain an expeditious resolution. *See Emp'rs*, 618 F.3d at 1169. There is no reason to believe, however, that transferring this case to the U.S. District Court for the Northern District of Texas would delay its resolution.

The remaining factors are neutral or inapplicable. For example, as Hunter's claims arise under federal law, there are no conflict of law issues or questions of local law to be resolved. Another example is that Hunter cannot show she would have any more difficulty enforcing a judgment entered by the U.S. District Court for the Northern District of Texas than one entered by this Court.

As Hunter's choice of forum is not to be accorded a significant amount of weight in light of the fact that the incidents at issue did not occur in her chosen forum, and the other relevant factors weight in favor of transfer, this Court should transfer this case to the U.S. District Court for the Northern District of Texas.

DATED October 20, 2017.

                                           **AMERICAN RED CROSS**

                                           /s/ Michael A. Graziano
                                           Michael A. Graziano
                                           Jeffrey W. Larroca
                                           ECKERT SEAMANS CHERIN & MELLOTT, LLC
                                           1717 Pennsylvania Ave., N.W., 1200
                                           Washington, DC  20006
                                           (202) 659-6671/46
                                           (202) 659-6699 [Fax]
                                           mgraziano@eckertseamans.com
                                           jlarroca@eckertseamans.com

> Cary D. Dooley, OBA #12648
> Cathcart & Dooley
> 2807 Classen Blvd.
> Oklahoma City, Oklahoma 73106
> (405)-524-1110; fax: (405) 524-4143
> cdooley@cathcartdooley.com
>
> *Counsel for defendant*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **Defendant's Motion and Supporting Brief to Dismiss for Lack of Personal Jurisdiction and Improper Venue or Alternatively to Transfer Under 28 U.S.C. § 1404 and Brief in Support** was served on the 20th day of October, 2017, via the Court's electronic filing system on:

> Daniel E. Smolen, Esq.
> Smolen, Smolen, & Roytman, PLLC
> 701 S. Cincinnati Avenue,
> Tulsa, OK  74119
> *Counsel for Plaintiff*

> /s/ Michael A. Graziano
> Michael A. Graziano